Evans' adm'r.
  *vs*
Spillman.

---

Detinue.

*Case* 69.

April 11.

The case stated.

Obm334
117  406

# Evans' Administrator *vs* Spillman.

Error to the Garrard Circuit.

*Wills, construction of.   Devisees.   Instructions.*

Judge Marshall delivered the opinion of the Court.

This action of detinue was brought by the administrator of Evans, against Mrs. Spillman, widow and devisee of James Spillman, who had first administered upon the same estate, to recover a slave Jane, and her children, as a part of the estate of Evans. The case was tried upon the plea of *non detinet*, and the statute of limitations, and a verdict having been found for the defendant under instructions applicable to the latter plea, the plaintiff seeks a reversal of the judgment rendered thereon.

The slave Jane was formerly the property of John Evans, whose will, dated in 1813, and proved in 1823, contains the following clause: "I lend to my daughter Mary, one negro woman called Rachel, and her two mulatto girls Martha and Jane, during her life, and after her decease, I give the said Rachel, Martha, and Jane, to her children, if any, if none she may give them to whom she will." To each of his daughters the testator devises one or more slaves in similar terms. To his son George he lends a slave, during his life, and after his decease, gives to his children, if any, "if none, to pass with, and as the remainder of my estate hereafter mentioned." And after various specific devises, he lends all the remainder of his estate not mentioned, to his wife during her life, and after her decease, to be equally divided among his children, whom he names.

In 1823, James Spillman was appointed administrator with the will annexed, of John Evans. In 1827, Mary Evans, then Mrs. Beasly, having never had any child,

died, after having had possession of the three slaves devised to her for many years. In 1828, her husband died. In 1829, Wm. Dismukes, the present plaintiff, sold the slave Jane, and her son Lewis, then her only child, to James Spillman, and transferred them by bill of sale, with general warranty of the title; and under this sale Spillman obtained his first possession of Jane and Lewis. In 1833, Spillman died, having by his will, devised Jane and her children, to his wife, the defendant, and from 1829 up to the trial, Spillman and his widow had held and claimed the slaves as their own, under the bill of sale. In 1835, William Dismukes was appointed administrator of John Evans, and in 1845 commenced the present action.

There is no direct proof that the devisee, Mrs. Beasly, had made any disposition of Jane under the power in the will, and in the absence of such disposition and for want of it, the plaintiff claims that the slaves reverted to the estate of the testator, Evans, and the title vested in his administrator; that when the possession of Jane came to Spillman, the administrator of that estate, he held it necessarily in his fiducial character, and that consequently neither his possession nor that of his devisee, was or could be adverse, in the sense necessary for the application of the statute of limitations, or at any rate, that it could not be so unless there was an open renunciation of the trust, known to all concerned.

Assuming that the possession of Jane was with Dismukes after the death of Mary Beasly and her husband, and that by his absolute sale for a valuable consideration, it was transferred to Spillman, with whom and his devisee, claiming in their own right, it has remained ever since, and for fourteen years after the sale, and more than fifteen years after the death of Mrs. Beasly, the presumption is almost irresistible, that Mrs. Beasly had in fact, made some disposition of Jane, in which all parties acquiesced. But as this presumption is perhaps not conclusive, though based upon a possession extending through three times the period of the statutory bar, and as under the instructions given, the question of any such disposition having been made was not before the jury, the

*The assumption of facts by the Court, as the basis of an instruction which the jury are bound to find as supposed, does not constitute a ground for a new trial, if the law arising on the facts be correctly expounded to the jury.*

verdict derives no aid from this presumption, but must depend, either upon the correctness of the instruction given as to the effect of an adverse possession of five years, or upon the exclusion of all title in the administrator of Evans, under a proper construction of his will.

The instruction made no reference to James Spillman's possession, or to the character in which he held it, but decided in effect, that five years continued adverse possession by the defendant, claiming the slaves as her own, before the commencemeut of the action, was a bar to the plaintiff's recovery. If it were conceded that upon the death of Mrs. Beasly, the slaves devised to her fell back into the estate of her father, and that the title vested in his administrator, and that upon the administrator acquiring the possession of Jane, the presumption in the absence of all opposing testimony, would be that he acquired and held it in his fiducial character, and therefore, not adversely in law, to the rights belonging to that character; and that upon such a possession, whether held by him or a volunteer under him, the statute of limitation would not run; still we are of opinion that the undisputed facts of this case, as established by the evidence on both sides, not only rebut this presumption, but establish conclusively, that James Spillman did not acquire the possession of Jane as administrator, but acquired and held it, and transmitted it to his devisee in his individual right, in opposition to, and denial of any title as representative of the estate of Evans; that the possession was so held for nearly fifteen years before the commencement of this suit, and for nearly ten of these years after the present plaintiff became administrator; and that the plaintiff knew, and has during all this period known, that the possession was thus acquired and held. From the moment then that Dismukes became the administrator, he had full notice that these slaves were held adversely in fact, to any title which he might set up in that character: and therefore, according to the doctrine now well settled, it may be considered from that moment, as being in law, such an adverse possession as may, by the operation of the statute, be matured into a title, or as under the statute, will, in five years, bar a

recovery; *Turner* vs *Davis' administrator,* (1 *B. Mon.* 153.) The jury then having been bound to find the facts on which the efficacy of the five years adverse possession by the defendant depended, the assumption of those facts by the Court, or the failure to submit them to the jury, does not constitute such an error in the instruction, nor so affect the verdict found under it, as to furnish ground for a new trial.

But if upon the hypothesis assumed with regard to the title, we are mistaken in the principles and conclusions just stated, we are further of opinion, upon the will of John Evans, that the devise to his daughter Mary, having taken effect after his death, the slaves contained in that devise, never did nor could afterwards make a part of his estate. It may be that a devise to his daughter for life, with a general power of disposition at her death, and without any thing more, might not give the fee to her. But in this case the power is not simply engrafted on the estate for life; but the testator, after giving the estate for life, looks to the death of the devisee, and creates a new estate by giving the slaves to her children, if any, and if there be none, by giving to her the absolute power of disposing of the slaves, that is, in that event he gives them to her absolutely. He thus provides for both contingencies. And we think it may be fairly inferred, upon comparison of the devises to his daughters with that to his son, that if he had intended the slaves devised to his daughters, to come back into the residuum of his estate, in any event, he would have expressed that intention. The conclusion is, that he did not intend them to come back to his estate, but that he intended to dispose of them absolutely, and that he considered himself as so doing, by the devise to his daughters for life, and after their deaths, to their children, if any, and if none, then to be at their disposal, which is the effect of this devise.

Whether the interest given to the devisee may be regarded as an estate for life, with a contingent remainder in fee, or an estate for life which might become a fee upon a contingency, or an estate in fee, subject to be cut down to an estate for life, it is not material to decide. We think the testator intended to alienate the slaves en-

EVANS' ADM'R.
*vs*
SPILLMAN.

A devise of a slave to A. for her life, and at her death to her children, if any, if not A. to give it to whom she pleases. If the devisee die without issue, the estate does not revert to the heirs of the testator, but passes to the representatives of the devisee.

tirely from his estate. If his daughter should leave children, he controls the estate after her death, by securing it to her children. If she has no children at her death, he intends to control it no longer, but gives to her the absolute right of disposition, which is essentially the absolute right of property, and without any express disposition by her, this interest passed to her representatives and not to his.

Upon this view of the case, the plaintiff had no title, and as the jury might have been instructed peremptorily to find for the defendant, no hypothetical instruction could have been prejudicial to the plaintiff.

Wherefore, the judgment is affirmed.

*Turner* for plaintiff: *Caperton* for defendant.